927 So.2d 1275 (2006)
Betty Jo H. WRIGHT, Individually and as Natural Tutrix on behalf of the Minor Child, Peter B. Wright, and as Administratrix of the Estate of Ned D. Wright, and Ned D. Wright, Jr., Plaintiffs-Appellants
v.
LOUISIANA POWER & LIGHT, Mercedes-Benz of North America, Inc., and Daimler-Benz Aktiengesellschaft, Defendants-Appellees
Betty Jo H. Harris, a/k/a Betty Jo H. Wright, Individually and as Natural Tutrix on behalf of the Minor Child, Peter B. Wright, and as Administratrix of the Estate of Ned D. Wright, and Ned D. Wright, Jr., Plaintiffs-Appellants
v.
Daimlerchrysler Aktiengesellschaft, formerly known as Daimler-Benz Aktiengesellschaft and Mercedes-Benz USA, LLC., formerly known as Mercedes-Benz of North America, Inc., Bernard, Cassisa, Elliott & Davis, and Carroll, Burdick & McDonough, LLP, Defendants-Appellees.
Nos. 40,636-CA, 40,637-CA.
Court of Appeal of Louisiana, Second Circuit.
April 19, 2006.
*1276 Leger & Mestayer, by Michael J. Mestayer, New Orleans, Davenport, Files & Kelly, by Michael J. Fontenot, Monroe, for Appellants.
McGlinchey Stafford, PLLC, by Colvin G. Norwood, Jr., Gary G. Hebert, New Orleans, Hayes, Harkey, Smith & Cascio, LLP, by Thomas M. Hayes, III, Monroe, for Appellees.
Before BROWN, WILLIAMS, STEWART, GASKINS and PEATROSS, JJ.
BROWN, C.J.
Shortly after midnight on October 16, 1988, Ned D. Wright, a Monroe attorney, was killed in a one-vehicle accident. Wright, who was driving, had just left a local bar and had a blood alcohol level of 0.19%. Wright's death launched almost two decades of litigation by Wright's family primarily against Daimlerchrysler Aktiengesellschaft, formerly known as Daimler-Benz Aktiengesellschaft, and Mercedes-Benz USA, LLC., formerly known as Mercedes-Benz of North America, Inc. (hereafter referred to as "Mercedes-Benz"). Plaintiffs claimed that the death of Ned Wright was caused by deficiencies in the design and construction of Wright's 1982 Mercedes-Benz 380SL vehicle. In April of 2000, a jury found in favor of all defendants. The case was settled on appeal.
The case now before this court was filed in December 2003. Plaintiffs then filed against Mercedes-Benz and its attorneys, Carroll, Burdick & McDonough of California and Bernard, Cassisa, Elliott & Davis of Louisiana, for "DAMAGES AND FOR EQUITABLE REMEDY NULLIFYING JUDGMENT AND ORDERING NEW TRIAL BASED UPON FRAUD OR ILL PRACTICES AND SPOLIATION OF EVIDENCE." They also filed a separate rule to show cause to declare the judgments null and to order a new trial. The two actions were consolidated. Apparently, prior to trial of the original lawsuit, the attorneys for Mercedes-Benz had obtained possession and ownership of Wright's vehicle; however, this was not disclosed to plaintiffs, the court, or even to defendant's experts.
Exceptions of no cause of action and prescription and a motion for summary judgment were filed by defendants claiming that: 1) plaintiffs pled no facts supporting a finding that defendants owed them any duty to disclose; 2) plaintiffs could not meet the requirement of diligence as they did not exhaust obvious possibilities to find the vehicle; 3) because plaintiffs had earlier stated that the vehicle was irrelevant, its availability would not have changed the outcome of the trial; and 4) plaintiffs' claims were untimely and had prescribed. The trial court agreed with all four propositions.
In a written opinion, the trial court granted the exceptions of no cause of action and dismissed plaintiffs' case with prejudice. The court did not mention the alternative motion for summary judgment in its written opinion; however, in a standardized form entitled "Expedited Out Of Court Judgment," the court sustained defendants' exception of no cause of action, motion for summary judgment, exception of prescription and dismissed the action with prejudice. The trial court refused plaintiffs an opportunity to amend their *1277 petition relative to the exceptions of no cause of action and the issue of prescription. The court also refused to permit plaintiffs an opportunity to conduct any discovery before deciding the motion for summary judgement. This appeal followed. For the reasons set forth below, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Facts
The underlying litigation arose out of an accident which occurred on October 16, 1988. Shortly after midnight, Ned Wright, an attorney, with a blood alcohol level of 0.19%, left the Sixth Street Bar and Grill in Monroe with his wife, Betty Jo Wright, in their Mercedes. Neither husband nor wife buckled up their seatbelts. After driving two blocks, Wright drove the Mercedes over the left-hand curb, off the road, and up a guy-wire anchoring a light pole. The vehicle overturned. Wright was partially ejected from the Mercedes and died of asphyxiation as a result of the crash. Mrs. Wright survived the crash.
Within two days of the accident, Mrs. Wright, with the approval of her attorney, sold the Mercedes to Steven Taylor in Monroe for $11,455. Taylor paid by a check dated November 30, 1988. During the next year and a half, Taylor removed and replaced all of the Mercedes' damaged parts, including the windshield frame (i.e., the A-pillars) above the beltline, the left front fender, the headlight assembly, and the left door. Taylor sold the repaired Mercedes in Texas in February 1990.
On October 23, 1989, plaintiffs propounded a request for production. Specifically, plaintiffs asked defendants to produce any evidence it had that was "retrieved from the accident site" or "taken from the vehicle." Defendants responded on December 8, 1989, informing plaintiffs that it did not retrieve anything from the accident site or take anything from the vehicle. It is undisputed that at this time defendants' discovery answer was correct.
Defendants filed a motion alleging that plaintiffs spoliated evidence by selling the vehicle to a person who would undoubtedly replace all of the Mercedes' damaged parts, particularly, the A-pillars which were alleged to be defective. The trial court denied this motion. In opposing the spoliation motion, plaintiffs argued that defendants' motion should be denied because defendants had waited until 1991 to ask plaintiffs for the Mercedes.
On June 31, 1998, defendants filed a second spoliation motion, claiming that plaintiffs had allowed the A-pillars to be destroyed. Again, plaintiffs opposed the motion, arguing that defendants could have inspected the A-pillars if they had acted quicker. While this motion was pending, on November 23, 1998, defendants informed the court and plaintiffs that the Mercedes had been tracked to Texas.
The trial court denied defendants' second spoliation motion on August 23, 1999. Earlier, on March 1, 1999, Timothy Smith, an attorney for defendants, had purchased the Mercedes in Texas from Meredith Misenhelter and confirmed that the A-pillars had been removed. Smith did not transfer title to himself, but his name is on the bill of sale. This information was never disclosed to plaintiffs or the court.
Following the trial, plaintiffs allegedly searched the public DMV records for information about the Mercedes using the Vehicle Identification Number (VIN) and eventually, in 2003, learned of defendants' purchase of the Mercedes. The present petition and rule was then filed in December 2003.
The trial court noted the following undisputed facts. Plaintiffs had full custody and access to the vehicle before they ever *1278 filed suit. Plaintiffs intentionally sold the vehicle knowing full well that it would be repaired. Plaintiffs twice argued against defendants' spoliation motions, taking the position that the actual Mercedes and parts were irrelevant. Defendants informed plaintiffs that the Mercedes was in the Texas area in 1998; and plaintiffs made no effort to locate the vehicle until after the trial.
Considering the above facts, the trial court found that plaintiffs did not display the degree of industry, perseverance, care, and/or resourcefulness contemplated by the higher authorities in cases such as these, citing Gladstone v. American Automobile Association, Inc., 419 So.2d 1219 (La.1982).
As to the second question of duty to disclose, the trial court noted C.C.P. art. 1428(2), and concluded:
An examination of the response to [Request For Production] # 20 finds same to have been true at the time it was provided and it stayed "true" throughout the proceedings because Defendant never retrieved [anything] from the accident site involved nor did Defendant take [anything] from the vehicle in question following the death of Ned D. Wright. However, the overall circumstances must still be evaluated.
The court concluded that defendants' failure to inform plaintiffs of their purchase of the Mercedes was not, in substance and under the circumstances, a knowing concealment, because defendants informed plaintiffs that they were tracking the Mercedes, and plaintiffs made no effort at all to locate the Mercedes until after the case had been settled on appeal.
Finally, the trial court granted defendants' exception of prescription as it found that more than one year had passed since the judgment of the original cause and found that plaintiffs' petition contained only conclusory language as to when the plaintiffs first learned of the possible "fraud or ill practices" committed by defendants.

Discussion

Peremptory Exception of No Cause of Action
In reviewing a trial court's ruling on a peremptory exception of no cause of action, the appellate court should conduct a de novo review because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. Short v. Short, 40,136 (La.App. 2d Cir.09/23/05), 912 So.2d 82.
C.C.P. art. 934 states:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.
The trial judge, in his reasons for judgment, stated that it had been over a year since the conclusion of the original case, and that plaintiffs' "conclusory" statement that they "first learned of the possibility of the above recited fraud or ill practice less than one year from the date of the filing of this petition" should not be sufficient to overcome a plea of prescription.
It may be presumed that, given the chance to amend their petition, plaintiffs would state with more accuracy the time and manner that they first discovered or had reason to investigate the supposed act of fraud or ill practice. Given the mandatory language of C.C.P. art. 934, we find that the trial court committed error in not *1279 giving plaintiffs leave to amend their petition.
We also find that the other reasons given in granting the exception of no cause of action, i.e., due diligence, no duty to disclose, and that the disclosure would not have changed the outcome, are applicable to the summary judgment motion and not the exception of no cause of action. Certainly, these matters were factually pled and must be accepted as correct in deciding a no cause of action exception. Edmonds v. City of Shreveport, 39,893 (La. App. 2d Cir.08/31/05), 910 So.2d 1005.

Motion for Summary Judgment
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of all except certain disallowed actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Magnon v. Collins, 98-2822 (La.07/07/99), 739 So.2d 191. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1).
The mover may point out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. The burden then shifts to the plaintiff who must demonstrate that he has evidence which, if believed, would support the essential elements of his claim. La. C.C.P. art. 966 C(2); Hardy v. Bowie, 98-2821 (La.09/08/99), 744 So.2d 606. Mere speculation is not sufficient. Babin v. Winn-Dixie La. Inc., 00-0078 (La.06/30/00), 764 So.2d 37. Appellate review of a grant or denial of summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.02/29/00), 755 So.2d 226; Belt v. Wheeler, 36,585 (La.App. 2d Cir.12/18/02), 833 So.2d 1256; McEachern v. Mills, 36,156 (La.App. 2d Cir.08/16/02), 826 So.2d 1176.
We find defendants' argument that their answer to the motion to produce was correct and that they had no duty to disclose to be specious. Defendants consciously hid the fact that they had the car. Whether an examination of the car could have benefited plaintiffs' case is unknown. Clearly, C.C.P. art. 1428(2) imposed a duty on defendants to amend their prior response to discovery requests.
Plaintiffs argue that their accident reconstruction expert, Dr. Rudy Limpert, was criticized by the defense during trial for not producing detailed drawings or tests of the accident sequence, a failure, the expert explained, which resulted from a dearth of "physical evidence" available for his inspection. Plaintiffs further contend that, had Dr. Limpert had access to the Mercedes, plaintiffs could have effectively negated the testimony of the primary defense expert with respect both to the mechanism and severity of the accident.
Further, plaintiffs list many issues of contested fact about which discovery was sought and denied before the hearing on the motion for a summary judgment. These discovery requests center around the Mercedes while it was in the control of defendants, such as who examined the vehicle, whether any photographs were taken of the vehicle, the welding quality of the A-pillars, whether any expert conclusions were made after an examination of the vehicle, and other similar questions.
*1280 It is clear that there are genuine issues of material fact surrounding the Mercedes while it was in the custody of defendants. It is equally apparent that refusing any discovery prior to the granting of the motion for summary judgment is violative of the directive of La. C.C.P. art. 966 C(1).

Conclusion
For the reasons set forth above, the trial court's judgments denying plaintiffs, Betty Jo Wright and the heirs of Ned Wright, the opportunities to amend their petition and to conduct discovery pursuant to La. C.C.P. art. 966 C(1), are reversed. Further, the granting of exception of no cause of action and summary judgment are also reversed, and the matter is remanded for further proceedings consistent with this ruling. Costs of this appeal are to be borne by defendants.
REVERSED AND REMANDED.
STEWART, J., dissents with written reasons.
STEWART, J., dissents.
I must respectfully dissent. The trial court was correct in sustaining the defendants' exception of no cause of action and motion for summary judgment in this nullity action brought by plaintiff.
There was no fraud or ill practices in the instant case regardless of the fact that defendants did not disclose to plaintiff that they had acquired the subject Mercedes until shortly before trial. The plaintiff had every opportunity to conduct any discovery needed on the Mercedes in 1988 when it was in the custody of Mrs. Wright, who with the blessing of her attorney, sold the vehicle to Steven Taylor. Plaintiff was aware of the location of the vehicle for the next year and a half while it remained in the possession of Mr. Taylor, yet she sought no inspection or discovery of the vehicle.
In 1998 the defendants notified the plaintiff of the name of the owner of the vehicle in Texas. The record further reveals that the defendants did not come into possession of the car until 1999 when it purchased the vehicle from the owner in Texas to confirm that the A-pillars had been removed following the initial accident. The plaintiff had over a decade of unfettered access to the subject vehicle and specifically chose not to conduct any discovery, nor did it at any time attempt to locate the car. The fact that the defendants purchased the subject vehicle and sent it to salvage after determining that the A-pillars had been removed ten years earlier by Mr. Taylor, as per his deposition testimony, is of no moment.
Judge Sharp correctly found that the defendants had no duty to make this disclosure[1]; that the plaintiff had not diligently pursued the undisclosed evidence; and that the plaintiff had not shown that the nullity action was filed within one year of her discovery of the alleged fraud or ill practice.
When the plaintiff made its initial discovery request on October 23, 1989, to Mercedes seeking "tangible evidence retrieved from the accident site" or "taken from the vehicle in question" Mercedes truthfully responded that it has no evidence responsive to this request. In fact at the time of this request, plaintiff was aware that the vehicle was still in the possession of Mr. Taylor, who had already removed and discarded the entire windshield frame, including the A-pillars.
The claim of fraud or ill practices is simply unsupported by the record. The *1281 defendants had no duty to disclose their acquisition of the vehicle. It is the plaintiff's lack of diligence and deliberate decision to not seek the vehicle in question as a part of its trial strategy that gave rise to the instant case. Thus, I must dissent.
NOTES
[1] The lack of professionalism by the defendants does not rise to the level of a finding of legal error or fraud or ill practices.